#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **CHAZ STODOLAK**, individually and on behalf of all others similarly situated, | : : : | Case No: |
| Plaintiff, | : : | Hon. |
| v. | : : | Mag. |
| **TIARA YACHTS, INC**, a corporation, | : : | |
| Defendant. | : : : | |

### COMPLAINT AND JURY DEMAND

Plaintiff, Chaz Stodolak ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned attorneys, hereby brings this action seeking Court Supervised Notice pursuant to 29 U.S.C. § 216(b) and a Class Action pursuant to Fed. R. Civ. P. 23 against Tiara Yachts, Inc. ("Defendant") arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law. Plaintiff's allegations herein are based upon knowledge as to matters relating to himself and upon information and belief as to all other matters.

### JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

2. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

1

3. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

4. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of his federal claims.

5. This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Michigan, employs individuals within the state of Michigan, and is registered with the Michigan Department of Licensing and Regulatory Affairs.

6. Venue lies in in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District.

## **PARTIES**

7. Plaintiff Chaz Stodolak is a resident of Holland, Michigan and has worked for Defendant as a non-exempt hourly employee from approximately September 30, 2024 to the present. Defendant has compensated Plaintiff through the payment of an hourly rate, most recently $22.00 per hour. Plaintiff's consent to join this collective action is attached hereto as **Exhibit A**.

8. Additional Opt-in Plaintiffs were or are employed by Defendant as hourly employees during the past three (3) years and their consent to join forms will also be filed in this case.

9. Defendant Tiara Yachts, Inc. is a Michigan corporation (Identification No. 800101111) and maintains a registered agent for service of process listed as Thomas Slikkers, 725 E. 40th Street, Holland, Michigan 49423.

10.     Defendant manufacturers handcrafted, American-made luxury yachts designed for performance and comfort.

**GENERAL ALLEGATIONS**

11.     Prior to hiring prospective non-exempt hourly employees ("Hourly Employees"), Defendant provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

12.     Defendant maintains documents demonstrating the promised hourly wage for each Hourly Employee, including, but not limited to: offer letters, paystubs, and/or payroll records.

13.     Plaintiff received an offer from Defendant to work as an Hourly Employee, and he accepted Defendant's offer with the understanding that his base hourly rate would be paid for all hours worked.

14.     Defendant employed and has employed other similarly situated non-exempt Hourly Employees in Michigan.

15.     Over the course of his employment, Plaintiff has worked as a Composite Technician for Defendant.

16.     Plaintiff has performed under his agreement with Defendant by carrying out his job duties and responsibilities, which include, but are not limited to, manufacturing the fiberglass reinforced plastic (composite) parts needed to construct components of a boat/yacht; completing lay-up or fabrication of engineered composite (fiberglass) structures; and following build specifications in a safe and organized work area. Plaintiff also performed the on- an off-the-clock work described herein.

17.     Due to the nature of its operation, Defendant requires Plaintiff and similarly situated Hourly Employees to wear company-issued protective clothing and safety equipment during their

work shifts in order to protect themselves from exposure to chemicals and other hazards. The company-issued protective clothing and safety equipment include an air and waterproof suit, spray sock, safety glasses/goggles, cotton gloves, and rubber chemical gloves ("PPE").

18. Defendant pays its Hourly Employees at varying hourly rates.

19. Defendant's Hourly Employees work up to and more than forty (40) hours per week.

20. During Plaintiff's employment with Defendant, there have been one or more instances when he worked forty (40) hours or more in a workweek.

21. Defendant provides training to Hourly Employees, on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; attendance; and Defendant's policies. The training that all of Defendant's Hourly Employees receive is substantially, if not entirely, the same, and Defendant's Hourly Employees, including Plaintiff, are subject to the same relevant policies and procedures.

22. At all relevant times, Defendant has controlled Plaintiff's and all other Hourly Employees' work schedules, duties, protocols, assignments, and employment conditions.

23. At all relevant times, Defendant has used the Paycom timekeeping program, accessible on employee cell phones and physical timeclocks, for purposes of recording employee hours worked and compensation.

24. Regardless of the specific job title, all of Defendant's Hourly Employees are classified as non-exempt; use the same timekeeping system; and are subject to the same relevant timekeeping, pay, and attendance policies.

A. **Automatic Meal-Break Deduction Policy**

25. Defendant promises Plaintiff and similarly situated Hourly Employees one unpaid

4

30-minute meal period each shift.

26. At all relevant times, Defendant has utilized an 'auto-deduction' feature in its computerized time/pay system which automatically deducts 30 minutes of time from Plaintiff and Hourly Employees' work shifts for meal periods regardless of whether or not the full 30-minute meal period is taken.

27. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>*completely relieved*</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

28. At all relevant times, Plaintiff and the Hourly Employees have regularly performed at least six (6) to eight (8) minutes of compensable work for Defendant during their uncompensated "meal breaks."

29. More specifically, Defendant requires Plaintiff and similarly situated employees to change out of ("doff") their PPE at the worksite once their "meal break" commences and *before* taking their actual meal period. This process takes substantial time, approximately three (3) to four (4) minutes per shift, and is an integral and indispensable part of Plaintiff and similarly situated employees' principal work activities because Defendant requires that it be done at the worksite.

30. Further, Defendant trains and instructs its Hourly Employees, like Plaintiff, to be at their workstations, wearing all company-issued PPE, the moment their 30-minute "meal breaks" conclude. This requires Plaintiff and similarly situated Hourly Employees to change back into

5

("don") the PPE *before* their unpaid "meal break" concludes. This process, like the doffing procedure, takes approximately three (3) to four (4) minutes per shift and is an integral and indispensable part of Plaintiff and similarly situated employees' principal work activities because Defendant requires that it be done at the worksite.

31. Defendant does not prohibit Plaintiff and similarly situated Hourly Employees from working during their "meal breaks." Instead, Defendant routinely suffers or permits them to perform such work and routinely fails to ensure that work is not being performed during their "meal breaks."

32. Defendant knows or should have known that Plaintiff and its Hourly Employees perform work during their unpaid "meal breaks" because, *inter alia*, Plaintiff and the Hourly Employees perform such work for Defendant, on Defendant's premises, in plain sight, and at management's request.

33. Upon information and belief, Defendant never: (1) communicated to Plaintiff or other Hourly Employees that they could request reversal of the 30-minute automatic meal break deductions; (2) provided Plaintiff or other Hourly Employees a means to seek reversal of the 30-minute automatic meal break deductions; and (3) reversed such deductions during the relevant time period.

34. Despite knowing that Plaintiff and similarly situated Hourly Employees work during their "meal breaks," and receiving, accepting, and enjoying the benefits from such work, Defendant failed to compensate them for it.

### B. Time-Shaving Practice

35. At all relevant times, Defendant maintained an unlawful time shaving policy pursuant to which it shaved work Plaintiff and Hourly Employees performed on-the-clock at the

end of their shifts.

36.     More particularly, once Plaintiff and the Hourly Employees conclude their work for their shifts and *before* clocking out and leaving the building, they are required to doff their PPE. This process takes substantial time, approximately three (3) to four (4) minutes per shift, and is an integral and indispensable part of Plaintiff and similarly situated employees' principal work activities because Defendant requires that it be done at the worksite.

37.     Although the doffing process takes place on-the-clock, Defendant shaves time from Plaintiff and the Hourly Employees' clock out times and pays them as of the last quarter hour.

38.     For example, on October 7, 2024, Plaintiff clocked out at 3:27 p.m. but was only paid as of 3:15 p.m.

39.     By way of further example, on October 16, 2024, Plaintiff clocked out at 3:08 p.m. p.m., but was only paid as of 3:00 p.m.

40.     As a result, Defendant fails to pay Plaintiff and all other similarly situated Hourly Employees for all hours worked, including overtime hours in workweeks in which they worked more than forty, as required by the FLSA. Specifically, Defendant fails to pay Plaintiff and the Hourly Employees for the three (3) to four (4) minutes they spend doffing their PPE at the end of their shifts.

41.     Defendant's time-shaving practice was intended to and has systematically underpaid all of Defendant's Hourly Employees, including Plaintiff.

42.     Defendant's time-shaving practice did and does not meet the FLSA requirements of a legal "rounding" practice as described in 29 C.F.R. § 785.48 because any time-shaving does not "average out so that the employees are fully compensated for all the time they actually work," and instead "result, over a period of time, in a failure to compensate the employees properly for

all the time they [] actually worked." *Id*.

43.   Upon information and belief, the FLSA violations discussed herein were committed against every hourly employee in every workweek and resulted in a substantial amount of uncompensated work over the past three (3) years.

44.   Defendant knew or should have known that its time-shaving policy and practice violated the FLSA.

## SIMILARLY SITUATED ALLEGATIONS

45.   Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of himself and on behalf of:

> *All current and former Hourly Employees who worked for Defendant at any time in the past three years.*

(hereinafter referred to as the "Putative Plaintiffs"). Plaintiff reserves the right to amend this definition if necessary.

46.   Excluded from the definition of the Putative Plaintiffs are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

47.   Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

48.   Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the Putative Plaintiffs for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

49.   Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

50.   An action for Court Supervised Notice collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29

U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this action are similarly situated because (a) they were or are subject to Defendant's unlawful automatic meal break deduction policy; (b) they were not compensated for all hours worked; and (c) their claims are based upon the same factual and legal theories.

51. Plaintiff estimates the Putative Plaintiffs, including both current and former Hourly Employees over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

52. Plaintiff and the Putative Plaintiffs' claims are based on the same legal theories, namely, Defendant's statutory violations, and proof of Defendant's violations, as well as Defendant's unlawful conduct, will be common across all Putative Plaintiffs.

53. Plaintiff asserts that at least a strong likelihood exists that he is similarly situated to the Putative Plaintiffs.

54. The Putative Plaintiffs are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

55. The Putative Plaintiffs should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the Putative Plaintiffs, who were unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

56. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> *All current and former Hourly Employees who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

57. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

58. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

   a. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

   b. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

59. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that he and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

60. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are

contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

61. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

62. This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

63. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

64. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

65. Plaintiff re-alleges and incorporates all previous paragraphs herein.

66. At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

67. At all times relevant to this action, Defendant has been engaged in interstate

commerce, or in the production of goods for commerce, as defined by the FLSA.

68. At all times relevant to this action, Plaintiff and the Putative Plaintiffs were and/or have been "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

69. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the Putative Plaintiffs to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

70. Plaintiff and other Putative Plaintiffs, by virtue of their job duties and activities actually performed, were all non-exempt employees.

71. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

72. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

73. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

74. At all times relevant to this action, Defendant utilized an 'auto-deduction' feature in its computerized time/pay system which automatically deducts 30 minutes of time from Plaintiff and the Putative Plaintiffs' work shifts for meal periods despite Plaintiff and the Putative Plaintiffs performing work during this "meal break."

75. At all relevant times, Defendant maintained an unlawful time shaving policy pursuant to which it shaved work performed on-the-clock at the end of Plaintiff and the Putative

Plaintiffs' shifts.

76. Defendant's time-shaving policy did and does not comply with 29 C.F.R. § 785.48 because the policy does not "average out so that the employees are fully compensated for all the time they actually work," and instead "result[s], over a period of time, in a failure to compensate the employees properly for all the time they have actually worked." *Id*.

77. As a result of Defendant's unlawful "meal break" deduction and time-shaving policies, Defendant failed to pay Plaintiff and the Putative Plaintiffs the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

78. The donning and doffing work performed every shift by Plaintiff and the Putative Plaintiffs was an essential part of their jobs and these activities and the time associated with these activities was significant.

79. In workweeks where Plaintiff and the Putative Plaintiffs worked forty (40) hours or more, the uncompensated work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.

80. At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and the Putative Plaintiffs the legally required amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA.

81. As a result of Defendant's willful failure to compensate Plaintiff and the Putative Plaintiffs at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104.

Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

82. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the Putative Plaintiffs for all work activities, but did not.

83. Plaintiff and the Putative Plaintiffs are entitled to backpay, liquidated damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

84. Plaintiff re-alleges and incorporates all previous paragraphs herein.

85. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

86. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for Hourly Employee work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

87. For example, Defendant offered to compensate Plaintiff at a minimum of $22.00 per hour if he agreed to perform services for Defendant as an Hourly Employee. Plaintiff accepted Defendant's offer and performed his duties as an Hourly Employee in reliance on the offer.

88. Defendant breached its contractual promises by failing to pay Hourly Employees at their fixed, pre-agreed upon hourly rate for all of the hours worked.

89. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period.

90. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the donning and doffing work described herein.

91. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

92. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

93. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

94. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing all work activities, which is a fundamental part of an "employer's job."

95. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT III
## RULE 23 NATIONWIDE CLASS ACTION
## UNJUST ENRICHMENT

96. Plaintiff re-alleges and incorporates all previous paragraphs herein.

97. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

98. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

99. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

100. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for all work they performed each shift, Defendant was unjustly enriched.

101. Plaintiff and the Rule 23 Nationwide Class members performed compensable work tasks at the request of and without objection by Defendant.

102. Defendant received and accepted the above-referenced work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

103. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

104. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

105. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

106. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

  a. An Order authorizing Court Supervised Notice pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiff a list of all current and former hourly employees who work or have worked for Defendant at any time in the past three years. This list shall include the last known addresses, emails, and telephone number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate;

  b. In the event the Defendant seeks to have discovery on the issues of whether the Putative Plaintiffs are similarly situated to Plaintiff, an order tolling the FLSA statute of limitations for the Putative Plaintiffs as of the filing of this Complaint through the end of the *Clark* discovery period;

  c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

  d. An Order designating the Plaintiff as representative of the Putative Plaintiffs and the Rule 23 Nationwide Class and undersigned counsel as Class counsel for the same;

  e. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

f.  An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regular hourly rate;

g.  An Order declaring Defendant was unjustly enriched by the uncompensated work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

h.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the Putative Plaintiffs, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

i.  An award of pre-judgment and post-judgment interest;

j.  An award of costs and expenses of this action together with reasonable attorneys' fees, and an award of a service payment to the named Plaintiff; and

k.  Such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: January 27, 2025

Respectfully submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Alana A. Karbal (P82908)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
Tel: (248) 355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiff and the Putative Plaintiffs*